ALBRECHT & WEAVER, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10129. Promulgated December 12, 1927.

*Frank J. Maguire, Esq.,* for the petitioner.
*J. W. Fisher, Esq.,* for the respondent.

OPINION.

SMITH: The only issue is whether the petitioner is entitled to classification as a personal service corporation. It contends that during both the years 1920 and 1921 it complied with all of the three conditions named in section 200 of the Revenue Acts of 1918 and 1921 as essential to such classification, namely, (1) that the income must be ascribed primarily to the activities of the principal owners or stockholders; (2) that the principal stockholders must themselves be regularly engaged in the active conduct of the corporation's affairs; and (3) that capital must not be a material income-producing factor.

The respondent contends, first, that the income can not be ascribed primarily to the activities of the principal owners or stockholders. Before deciding that question there is a preliminary one that must be settled. The list of stockholdings for the years 1920 and 1921 appearing in the foregoing findings of fact shows that no stock was issued to Maguire or Allen prior to or during the taxable years. It is the petitioner's contention, however, that, while no stock was actually held by Maguire and Allen during the years, they owned 100 shares each of the unissued stock. We think that the evidence does not support the petitioner's contention. The following testimony appears in the cross-examination of Albrecht, the only witness to testify in the proceeding:

Q. Now, when the corporation was organized did you and Mr. Weaver continue to be the only men actually doing the office work and actively conducting the business of the corporation?

A. No, no; Mr. Maguire and Mr. Allen were the other two in executive positions, and the only two who had clients of their own. In other words, they were the only two to whom we turned over any clients for such work as these clients wanted done.

Q. And did they put in their full time in the office?

A. Yes.

Q. And were they attorneys or accountants?

A. Mr. Maguire is an attorney and accountant. Mr. Allen is a certified public accountant and not an attorney.

Q. No stock was issued to either one of them?

A. Not until later.

Q. During 1919 and 1920 no stock was issued to them?

A. No; we simply had a contract with them that they would receive 100 shares of stock.

Q. But they didn't receive it during those years?

A. They didn't receive it during those years.

Q. Now, you four men, you, Mr. Weaver, Mr. Maguire and Mr. Allen, were the only four, as you call them, principals, of the business. You were the only ones who devoted all of your time to the business. I am not talking about the employees now but about the managers.

A. Yes, that is right.

The contract referred to for the issuance of the stock to Maguire and Allen was not produced nor was any further explanation of its terms and conditions given. It is not shown that Maguire and Allen paid any consideration upon such a contract or that they had any enforceable right with respect thereto. They did not receive any dividends or other monetary benefits from the stock which they are said to have owned. They had no voting power and it is not shown that they exercised any of the privileges commonly associated with stock ownership. They both received substantial salaries during the years 1920 and 1921. None of the others who owned and held stock received any salary or other compensation from the business. This would indicate that Maguire and Allen stood in an entirely different relationship to the petitioner from the stockholders. Albrecht further testified that upon organization of the petitioner the partnership turned over to it the accounting business for a consideration of 501 shares of stock and that this stock was considered as belonging to the partnership firm rather than to himself and Weaver individually; that he and Weaver, who controlled the petitioner at all times, were only waiting a favorable opportunity to issue the remaining stock.

Upon the record before us and for the purpose of application of section 200 of the statute, we are of the opinion that those to whom the stock had been issued and was outstanding during the years 1920 and 1921 must be accepted as the owners and stockholders.

Moreover, it appears from the testimony above given and from facts elsewhere stated that much of the managerial duties of the petitioner's business devolved upon Maguire and Allen. They received clients on the same footing with Albrecht and Weaver and offered them their personal services. They directed the work of the employees as did Albrecht and Weaver. These four persons are referred to as "principals" in the business. We think that they must all be considered among those to whom the petitioner's income is primarily to be ascribed.

It further appears that the petitioner employed during the taxable years from 8 to 17 employees who held no stock and to whom it paid salaries; that they were for the most part accountants and auditors; that the petitioner derived its income solely from fees for the work of auditing and accounting; that the total salaries of these employees was $28,975.77 for 1920 and $39,180.26 for 1921, whereas, the petitioner's total income was $44,696.45 for 1920 and $60,282.25 for 1921. See *Appeal of Patterson-Andress Co.*, 6 B. T. A. 392.

We can not agree, therefore, that the petitioner's income must be ascribed primarily to the activities of the principal owners or stockholders.

The respondent contends also that the second condition has not been met that the principal stockholders were regularly engaged in the activities of the petitioner's affairs. This raises two questions, (1) whether Albrecht and Weaver can be said to have been regularly engaged in the active conduct of the petitioner's affairs during the same years that they were engaged in the active conduct of the affairs of the partnership, and (2) whether Lytle, Redfield, Butler, and Mitchell, who held 10, 20, 60, and 60 shares of stock, respectively, and who took no part in the active conduct of the petitioner's affairs, were principal stockholders.

We believe that both of these questions must be answered as the respondent contends. The evidence shows that the partnership which Albrecht and Weaver conducted was a very active business. It was by its very nature a business exacting in its requirements for regular and consistent services on the part of its proprietors. That it was likewise remunerative is shown by the fact that Albrecht received as his share of earnings approximately $10,000 in 1920 and $13,000 in 1921. His share of the petitioner's earnings for the same periods was approximately $1,900 and $3,400, respectively. The facts here are similar to those in *Matteson* v. *Willcuts*, 12 Fed. (2d) 447, where the court expressed itself as follows:

Throughout the year 1918, Mr. C. D. Matteson was Vice-President of the Capitol Trust & Savings Bank of St. Paul, an important financial institution of that city, and received a large salary for his services with that corporation. Without question, he was regularly and no doubt constantly engaged in the active conduct of the affairs thereof. Can it be possible that he was also at the same time regularly engaged in the active conduct of the affairs of the plaintiff corporation within the meaning of the law in question? If that could be true as to two corporations, the number might be increased. The law no doubt contemplates such regularity and such continuity of service as would not permit a stockholder, seeking to qualify under this requirement, to apportion his time and energies between or among different corporations. If one of the principal stockholders might be permitted to give a trifling part of his time and energies to the affairs of such a corporation, then all might be so privileged and before

long the requirements of the law would be substantially ignored. The intent of the law is that each such stockholder must be devoting his time and his energies in substantial measure to the corporation in question. In contemplation of law, he must be regularly engaged in a substantial way in earning the income in which he claims a share. If to bring the corporation within the personal service class, his service is required, that service must be such that he cannot at the same time render an equal service to one or more other corporations. There is constant temptation to urge that particular corporations, with no right to such favor, be accorded classification as personal service corporations, and the requirements necessary thereto must be substantially observed. Even if it were held possible under the law here in question, for a person to be regularly engaged in the active conduct of the affairs of two or more corporations at the same time, in such manner and to such extent as to qualify each of such corporations as personal service corporations, still Mr. C. D. Matteson is not within such class here. The extent of his duties at the bank precluded his being regularly engaged with the affairs of plaintiff in such sense as is contemplated by the law. Such attention as he gave was intermittent and irregular. He was at plaintiff's place of business from time to time as was convenient, and he turned over to plaintiff certain insurance on a brokerage basis. To hold that he was regularly engaged in the active conduct of the affairs of the corporation, would be to invite corporations of every variety wrongfully to apply for the classification which is sought here.

We agree with these views and we do not believe that any distinction should be made here because there is involved a partnership rather than another corporation, or because of the close relationship of the partnership and the petitioner. We do not believe that Albrecht and Weaver could have apportioned their time and energies between the partnership here and the petitioner with any less violence to the rule of the statute than they could have between two corporations.

As to the second question, we find that Lytle, Redfield, Butler and Mitchell held during both the years 1920 and 1921 a total of 150 of the 301 shares outstanding. The principal stockholders of a corporation can not be ascertained by any mathematical formula based upon a strict percentage of holdings, but it appears certain that where such a relatively small amount of stock is held by only 6 persons, none of whom holds more than 75½ shares, the two persons holding 60 shares each are among the principal stockholders. We must conclude, therefore, that the principal stockholders here were not regularly engaged in the active conduct of the petitioner's affairs.

It is unnecessary for the purpose of our decision to consider the question whether capital was a material income-producing factor.

*Judgment will be entered for the respondent.*

Considered by LITTLETON, TRUSSELL, and LOVE.